**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| MICHAEL J. QUILLING, Receiver for SARDAUKAR HOLDINGS, IBC and BRADLEY C. STARK, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil No. 3:05-CV-2122-BH (H) |
| JEFFREY MARC SCHONSKY | § § § | |
| Defendant. | § | Consent Case |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the District Court's *Order of Transfer*, filed January 3, 2006, and the consent of the parties, this matter has been transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court are the following pleadings:

(1)   *Plaintiff's Motion for Summary Judgment* ("Mot."), filed September 6, 2006;

(2)   *Brief in Support of Plaintiff's Motion for Summary Judgment* ("Br."), filed September 6, 2006;

(3)   *Appendix to Plaintiff's Motion for Summary Judgment* ("App."), filed September 6, 2006;

(4)   Correspondence received from Defendant on September 25, 2006 ("Resp."); and

(5)   *Plaintiff's Reply Brief in Support of His Motion for Summary Judgment* ("Reply"), filed December 15, 2006.[1]

After consideration of the pleadings, evidence, and applicable law, Plaintiff's *Motion for Summary*

---

[1] Pursuant to this Court's *Order*, dated December 6, 2006, Plaintiff was given leave until December 15, 2006, to file its *Reply*.

*Judgment* is hereby **GRANTED**.

## I. BACKGROUND

This case arises out of a lawsuit brought by the Securities and Exchange Commission ("SEC") against various defendants for the sale of unregistered securities. *SEC v. Megafund Corp.*, No. 3-05-CV-1328-L (N.D. Tex. filed July 1, 2005). In that case, the SEC alleged that the defendants, including Sardaukar Holdings, IBC ("Sardaukar") and Bradley C. Stark ("Stark"), raised more than $13 million from unwitting investors by making false representations about the expected rate of return on their investments, and by promising that a portion of the profits generated from the sale of securities would be used to benefit charitable causes. On July 5, 2005, the court appointed Michael J. Quilling as the Receiver ("Receiver") for all defendants in the litigation. In that capacity, Receiver was authorized to:

> take[ ] exclusive jurisdiction and possession of the assets, monies, securities, claims in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of [the named defendants and relief defendant] and any entities they control ("Receivership Assets"), and the books and records of the Defendants and Relief Defendant ("Receivership Records").

*Order Appointing Temporary Receiver*, *SEC v. Megafund Corp.*, No. 3-05-CV-1328-L, 1-2 (N.D. Tex. July 5, 2005) ("Order Appt. Receiver"). The *Order* further provides:

> The Receiver is hereby authorized to institute, defend, compromise or adjust such actions or proceedings in state or federal courts now pending and hereafter instituted, as may in his discretion be advisable or proper for the protection of Receivership Assets or proceeds therefrom, and to institute, prosecute, compromise or adjust such actions or proceedings in state or federal court as may in his judgment be necessary or proper for the collection, preservation and maintenance of Receivership Assets.
>
> The Receiver is hereby authorized to institute such actions or proceedings to impose a constructive trust, obtain possession and/or recover judgment with respect to person or entities who received assets or funds traceable to investor monies. All such actions shall be filed in this Court.

*Id*. at 5-6.

On October 28, 2005, Receiver filed the instant action against Defendant Jeffrey Marc Schonsky ("Defendant"), a resident of the State of New York. Receiver seeks to recover $175,000 of investor funds allegedly transferred by Stark to Defendant as well as another $12,915.05 allegedly used to purchase a Rolex watch and laptop computer for Defendant.[2] (Mot. at 1.) Defendant admits that he received the funds, watch, and computer substantially as described in the *Complaint* but claims that the funds and items were "gifts." (Resp. at 2; Br. at 6.)

On September 6, 2006, Receiver filed the instant *Motion for Summary Judgment* on his fraudulent transfer claim. On September 25, 2006, the Court received correspondence from Defendant alleging that although he still had the watch, he no longer had the funds nor the means to repay them. The Court construes the correspondence as Defendant's response to the motion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal that there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings,

---

[2]The *Complaint* initially sought recovery of $7,500 for the Rolex watch and $6,719.42 for the laptop computer for a total of $14,219.42. (*Complaint*, *Quilling v. Schonsky*, No. 3:05-CV-2122-BH, 3 (N.D. Tex. filed Oct. 28, 2005.) Evidence submitted in the *Motion for Summary Judgment* shows that the cost of the Rolex watch was $6,195.63. Thus, the total recovery sought for the Rolex watch and laptop is $12,915.05. (*App.* at 6 and 9.)

depositions, answers to interrogatories, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Where the nonmovant fails to respond to the motion for summary judgment, such failure does not allow the court to enter a default summary judgment. *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277 (5th Cir. 1985) (citing *John v. La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)). However, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute

summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). In addition, the movant's evidence may be accepted as undisputed. *Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (citing *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman*, 945 F. Supp. at 1002).

### III. ANALYSIS

### A. Fraudulent Transfer

Receiver alleges that the $175,000 and $12,915.05 spent on the Rolex watch and laptop computer were fraudulent transfers of proceeds of a *Ponzi* scheme[3] and in violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"). (Mot. at 2.) The TUFTA provides in relevant part that:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor.

TEX. BUS. & COM. CODE ANN. § 24.005(a) (Vernon 2002).[4] Ordinarily, the creditor must prove that the challenged transfer was made with the intent to defraud. *See Quilling v. Gilliland*, 2002 WL 373560 at *2 (N.D.Tex. Mar. 6, 2002). However, in the case of a *Ponzi* scheme, courts have found

---

[3]A *Ponzi* scheme is a fraudulent investment scheme where money from new investors is used to pay "profits" on the money contributed by earlier investors, without the operation of an actual revenue-producing business other than the raising of new funds by finding more investors. *See* BLACK'S LAW DICTIONARY 1180 (7th ed. 1999).

[4]The New York Fraudulent Conveyance Act operates in the same manner as the TUFTA with respect to transfers out of a *Ponzi* scheme. *See* N.Y. DEBT & CRED. LAW § 276 (McKinney 2001) ("Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.")

- 5 -

that the debtor's intent to hinder, delay, or defraud is established by the mere existence of the *Ponzi* scheme. *Id.*; *see also Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) (burden of proving that transfers were made with actual intent to defraud is satisfied by establishing the existence of a *Ponzi* scheme "which is, as a matter of law, insolvent from its inception"); *SEC v. Cook*, 2001 WL 256172 at *3 (N.D. Tex. Mar. 8, 2001) (citing *In re Independent Clearing House Co.*, 77 B.R. 843, 860 (Bankr. D. Utah 1987) (finding requisite intent to defraud from fact that debtor must have known that *Ponzi* scheme would inevitably collapse and that later investors would lose their investment).

For the purposes of summary judgment, the Receiver's uncontroverted testimony may prove the existence of a *Ponzi* scheme. *See Cook*, 2001 WL 256172 at *3. Receiver's affidavit and supporting evidence conclusively establish that Sardaukar was an unlicensed investment broker created and controlled by Stark. Investors, who were promised high-yield returns on their contributions, were recruited by Stark and instructed to send funds to an account at JP Morgan Chase Bank. (App. at 6-7.) As Sardaukar received those funds, Stark systematically diverted millions of dollars to benefit himself, his family, and his friends, including Defendant. (*Id.* at 7.) Sardaukar never generated any investment revenue. (App. at 6-7.) What little money remained after Stark depleted the JP Morgan Chase bank account was commingled and used to pay "returns" to earlier investors. (*Id.*)

Receiver has provided evidence which establishes that Sardaukar operated as a *Ponzi* scheme, and that investor funds from Sardaukar were transferred to Defendant in violation of the TUFTA. Among the payments made by Stark to Defendant were: (1) $6,195.63 to Ben Bridge Jeweler #48 on December 17, 2004, for the purchase of a Rolex watch; (2) $175,000 transfer on

February 24, 2005, directly to Defendant;[5] and (3) $6,719.42 to Alienware on May 5, 2005, for the purchase of a laptop computer. (Br. at 3; *see* App. at 9, 13, and 18.) In order to create a genuine issue of material fact, the burden now shifts to Defendant to identify record evidence showing that there was no intent to fraudulently transfer the Rolex watch, laptop computer, and $175,000. *See Celotex*, 477 U.S. at 324. Defendant offers no evidence to controvert Receiver's testimony and thus fails to show there was no intent to defraud. Although Defendant asserts that the transfers were "gifts" from Stark and that he was unaware that the source of the funds "might not be legitimate," (Resp. at 2.), a transferee's knowing participation in the *Ponzi* scheme is irrelevant under the TUFTA. *Warfield*, 436 F.3d at 558. Thus, there is no issue of genuine material fact as to whether Defendant was the recipient of fraudulent transfers from Sardaukar in violation of the TUFTA.

**B. Remedy**

Having established that Sardaukar operated as a *Ponzi* scheme and that Defendant received fraudulent transfers in violation of the TUFTA, Plaintiff seeks an entry of judgment in the amount of $187,915.05 and an order disgorging this amount from Defendant. (Mot. at 2.) "The district court has broad discretion in fashioning the equitable remedy of a disgorgement order." *SEC v. Huffman*, 996 F.2d 800, 803 (5th Cir. 1993) (citing *Am. Metals Exch. Commodities Futures Trading Comm'n v. Am. Metals Exch. Corp.*, 991 F.2d 71, 76 (3rd Cir. 1993)). In *SEC v. Megafund Corp.*, the case from which this lawsuit arises, the district court authorized Receiver to "obtain possession and/or recover judgment with respect to persons or entities who received assets or funds traceable to investor monies." (Order Appt. Receiver at 5-6.)

---

[5] Although the notation for the $175,000 transfer indicates that it is a "dividend" (App. at 13), the transfer was fraudulent because there were no profits to divide since the *Ponzi* scheme was insolvent from its conception. *See Warfield*, 436 F.3d at 558.

Disgorgement of the funds traceable to investor monies is an appropriate remedy in the instant case. Stark defrauded investors of millions of dollars, and Receiver traced some of these ill-gotten gains to Defendant in the form of a Rolex watch, a laptop computer, and $175,000. The disgorgement of the amount of these fraudulent transfers to Defendant, $187,915.05, would return to investors a portion of their defrauded investments.

### IV.  CONCLUSION

For the foregoing reasons, Receiver's *Motion for Summary Judgment* is **GRANTED**. The Court **ORDERS** judgment against Defendant Marc Schonsky in the amount of $187,915.05, together with pre- and post-judgment interest as allowed by law. As the prevailing party in this case, Receiver is entitled to recover "costs and reasonable attorney's fees as are equitable and just." *See* TEX. BUS. & COM. CODE ANN. § 24.013 (Vernon 2002). An application for attorney's fees shall be filed within 14 days after final judgment in accordance with FED. R. CIV. P. 54(d)(2).

**SO ORDERED** this 19th day of December, 2006.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE